UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Curtis Anthony, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:19-cv-01656-DCN-BM |
| | ) | |
| vs. | ) | |
| | ) | COMPLAINT |
| The Boeing Company, | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

1. Plaintiff Curtis Anthony (hereinafter referred to as "Plaintiff") bring this action against Defendant The Boeing Company (hereinafter referred to as "Defendant"), based on Defendant's actions in discriminating against Plaintiff on the basis of his race, retaliation, intentional infliction of emotional distress, violations of the Family Medical Leave Act, and breach of contract and breach of contract with fraudulent intent.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1343 and 42 U.S.C. Section 2000e(5), this bring a proceeding to enforce rights and remedies secured under 42 U.S.C. Section 1981 and other Federal relief. This Court also has pendant and supplementary jurisdiction over so much of this action as is based on state law.

3. Venue is proper in the Charleston Division, because the causes of action arose therein, the acts and practices complained of occurred there and it is where the Defendant does business and may be found.

## PARTIES

4. Plaintiff is a male citizen of the United States of America and resides in Berkeley County, South Carolina. Plaintiff began his employment with Defendant in 2011 and is currently employed with Defendant.

5. The Defendant, located in Charleston, South Carolina, is an organization with operations in the State of South Carolina with main corporate office in Chicago, Illinois and is legally organized and existing under the Code of Laws of the State of Delaware.

# FACTS

6. Plaintiff began his employment with Boeing on May 20, 2011 as a Quality Inspector under the supervision of Corey Townes (BM), Quality Manager. Plaintiff is currently under the direct supervision of Jermaine McKnight, Quality Manager. During the course of 2018 through to May 2019, Plaintiff was also under the Supervision of Heather Cox, Senior Quality Manager (WF). At all times during the course of his employment, Plaintiff performed his job well and to the best of his ability without disciplinary action or performance reprimands.
7. On or around April 2017, Plaintiff was working at Defendant's Building 88-188 (Decorative Paint Department) under the supervision of Eric Infinger (WM), Quality Manager and also Kattie Ringold (WF), Senior Quality Supervisor.
8. Plaintiff's team members during this time consisted of primarily Caucasian workers. Defendant allowed an atmosphere of racial hostility and harassment towards African Americans to continually and perpetually exist throughout Plaintiff's working unit as more fully described below.
9. On or around May 2017 up until September 2017, Plaintiff became a victim to targeted racial harassment of an intentionally extreme and outrageous nature. Specifically, on numerous occasions Plaintiff was subjected to racial harassment to include having Caucasian workers urinate in Plaintiff's seat and on his work desk numerous times, subjecting Plaintiff to racially targeted and harassing treatment to include trying to get Plaintiff to violate work protocols by asking that he review unfinished work product in the Production Department, and by exposing him to an environment where the term "nigger" was used on a daily basis. Plaintiff heard the usage and Plaintiff suffered mental anguish and emotional distress as a result thereof.
10. During the course of May 2017 through to September 2017 and up to the current date, on numerous occasions, Plaintiff made numerous specific protected complaints of this race discrimination and racial harassment to his supervisors Ringold and Infinger all to no avail. Plaintiff's complaints were continually rebuffed and no action was taken by the Defendant to address his concerns. In fact, Defendant acted with complete indifference to Plaintiff's complaints which was a direct violation of Defendant's own policies and procedures (i.e. Plaintiff's contract of employment), and it allowed Plaintiff to be continually and retaliatory racially crucified by the racially hostile work and extreme and outrageous environment which Defendant allowed to exist and perpetuated.
11. On or around August 2017, Plaintiff was moved to work in a different primary Department, specifically Defendant's Building 88-20 (Component Paint Department) under the supervision of Infinger. Defendant's actions in moving Defendant was due to retaliation on account of Plaintiff's protected complaints to management of the racial discrimination which he had received. In fact, Building 88-20 was a building without air conditioning, unlike 88-188 where Plaintiff was previously primarily stationed. It is clear that this was due to race discrimination, retaliation, breaches of Defendant's policies on race discrimination and retaliation (i.e. Plaintiff's contract)and resulted in an extreme and outrageous intentional infliction of emotional distress on Plaintiff.
12. Although Plaintiff was in a different primary building, he was still subjected to the enduring racially hostile culture of the Defendant and the same indifferent and racially hostile Management chain.

13. During the course of September 2017, Plaintiff, as a result of the extreme and outrageous racial hostility which was meted out to him by the Defendant with no relief from management, was forced to go out on FMLA to receive medical treatment and treatment to help him deal with the extreme stress and pressures created by the Defendant's racially hostile treatment towards him. Plaintiff voluntarily enrolled in Defendant's Employee Assistance Program as the stress that Plaintiff endured daily caused him to relapse with respect to his sobriety which created extreme stress for both Plaintiff and his family.
14. In January 2018, Plaintiff returned to work from FMLA in Defendant's Department 88-19. To Plaintiff's dismay, his use of FMLA further caused an increase in the retaliation which he received from Defendant.
15. Throughout 2018, Plaintiff applied for numerous promotable positions. Plaintiff was denied these positions as the Defendant filled the positions with lesser qualified Caucasian workers. These positions included two applications to the Quality Systems Specialist Position, an application to the Customer Coordinator Position, and two applications to Lead Position. Plaintiff was imminently qualified for these positions, but the Defendant selected Caucasian employees to each of these positions as a direct act of racial discrimination and retaliation for Plaintiff's protected complaints and due to his having taken legally protected Family Medical Leave. Likewise Defendant's policies regarding promotional opportunities were violated which resulted in a further breach of Plaintiff's contractual relationship with Defendant.
16. Between January 2019 and February 2019, Plaintiff was moved to New Orleans to work. After successfully performing his job duties in New Orleans, Plaintiff returned to Defendant's Department 88-19 in cell location 295. At this point, Plaintiff was placed under the supervision of McKnight and Cox.
17. On or around March 2019, Plaintiff was subjected to additional extreme and outrageous racially hostile treatment by Defendant as a noose was placed right over Plaintiff's desk by Defendant's workers and/or agents. This was an act of extreme racial violence designed to intentionally inflict emotional distress directly against Plaintiff. Plaintiff immediately reported this racially violent attack to Human Resources, Management, and even to the Vice President and General Manager of the 787 Program, Brad Zaback (WM), who provided Plaintiff with false and pretextual assurances that this treatment would cease. This was extremely distressing for Plaintiff and resulted in Plaintiff necessitating additional medical treatment and Plaintiff being forced out on FMLA leave due to this racist and retaliatorily extreme and outrageous conduct sanctioned and perpetuated by Defendant.
18. On information and belief, Defendant fully intends on returning Plaintiff, upon the completion of his FMLA leave, into the same racially hostile work place that necessitated his FMLA treatment.
19. Due to Defendant's blatant violations of the law and their own policies and procedures, Plaintiff has had to endure medical and counseling treatment, that continues to date, which has greatly reduced his quality of life and resulted in physical, mental, emotional, and financial damages.

## COUNT 1
## RACE DISCRIMINATION / RACIALLY HOSTILE WORK ENVIRONMENT
## 42 USC Section 1981

20. Plaintiff is a member of a protected group on the basis of his race. Plaintiff was retaliated against and forced out of work twice and relegated to medical treatment due to his race on account of Defendant's racially hostile treatment towards him in violation of U.S.C. § 1981.
21. Defendant, by and through its agents, began a pattern and practice of targeting the Plaintiff through systematic race based harassment and utter disregard of his complaints of race discrimination. Plaintiff's similarly situated Caucasian colleagues were not subjected to such treatment as Plaintiff, as Defendant made no efforts to enforce their own anti-harassment policies with respect to Plaintiff.
22. Plaintiff alleges that the on the job racially hostile treatment was guised as Defendant made promises that Plaintiff's protected complaints would be addressed. Nevertheless, these promises were purely pretextual. Plaintiff alleges that the Defendant, through its Agents, initiated discriminatory and hostile practices against Plaintiff based on his race to include looking Plaintiff over for promotions in favor of Plaintiff's lesser qualified and similarly situated Caucasian colleagues and by failing to treat Plaintiff' s Caucasian colleagues similarly for the same actions or to discipline them for their treatment of Plaintiff.
23. Defendant, and its agents, were reckless, wanton, and intentional in the discrimination of Plaintiff in the following particulars, to wit:

a. Knowingly allowing a work place full of racial hostility to exist which injured Plaintiff not once but twice and created a racially hostile work environment;
b. In retaliating against Plaintiff for complaining of the racial discrimination and racially hostile and harassing behavior of the Defendant and its agents;
c. In disparately treating Plaintiff adversely due to his race by failing to promote Plaintiff to positions for which he is imminently qualified in favor of Plaintiff's less qualified and similarly situated Caucasian colleagues.

24. In failing to protect Plaintiff from racial discrimination, preferential treatment, or retaliation, Defendant, and its agents, acted with malice or reckless indifference to the federally protected rights set out under 42 U.S.C. Sec. 1981 and Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. Sec. 2000e et. seq.), the South Carolina Human Affairs Law and the United States Equal Employment Opportunity laws.
25. Plaintiff is a member of a protected group on the basis of his race. Plaintiff was passed over for promotions and racially discriminated against, in violation of U.S.C. § 1981.
26. Defendant, by and through its agents, instituted a pattern and practice of targeting the Plaintiff by engaging in concerted racial harassment against Plaintiff to include erecting a noose at his desk, peeing on his desk on multiple occasions, overlooking him for promotions, and thorough other deviously concocted means of racially harassing and differentiating Plaintiff from his similarly situated Caucasian colleagues along racial lines.
27. Plaintiff alleges that the on the job treatment, retaliation, and wrongful termination were pretextual. Plaintiff alleges that the Defendant, through its Agents, initiated discriminatory practices against Plaintiff based on his race.

28. In failing to protect Plaintiff from racial discrimination, preferential treatment, or retaliation, Defendant, and its agents, acted with malice or reckless indifference to the federally protected rights set out under 42 U.S.C. Sec. 1981.
29. As a result of Defendant's race discrimination and exposure of Plaintiff to a racially hostile work environment, Plaintiff has suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiff also believes that a reasonable amount of punitive damages be levied against Defendant on account of its unlawful treatment of Plaintiff.

## COUNT 2
## BREACH OF CONTRACT

30. Each and every allegation set forth above is hereby repeated as fully incorporated herein.
31. Defendant publishes and maintains an Employee Handbook, which definitely assures employees of their right to report harassment and bullying, and an anti-retaliation clause.
32. Defendant further states, in its Employee Handbook, that it is an Equal Opportunity employer, when it declares that there will be no discrimination as to race, color, gender, age, religion, disability, national origin, or veterans status. Defendant further states, in its handbook, that it will comply with the requirements of the law in implementing equal employment decisions.
33. Plaintiff and Defendant entered into a binding and valid contract whereby Plaintiff relied on Defendant's, through its agents, reassurance that pursuant to the handbook and the above policies, and procedures. Plaintiff also relied on the Defendant's reassurance that it must follow its Equal Employment Opportunity policy when promoting its employees.
34. Plaintiff agreed to fulfill the duties of his position in exchange for valuable consideration and salary with the promise of being protected from race discrimination, retaliation, and racial harassment.
35. Plaintiff performed his job duties with due diligence, however Defendant, through its agents, unjustifiably failed to perform its duties by racially discriminating against and racially harassing Plaintiff and by failing to protect Plaintiff from the retaliatory actions of its agents and by retaliating against Plaintiff due to his protected complaints. All of these actions violate the contractual anti retaliation provisions within Defendant's employment handbook (contract), and other contractual policies and procedures of the Defendant. Further, Defendant failed to follow its Equal Employment policy when it failed treat Plaintiff the same as its Caucasian employees for promotional opportunities.
36. Defendant, and its agents, had a responsibility to ensure that Plaintiff would not be subjected to race discrimination. Defendant, through its agents, instead chose to do such, retaliated against Plaintiff when he complained within their management structure pursuant to their own policies and procedures and anti harassment policies, and failed to treat Plaintiff similarly to his Caucasian counterparts under like scenarios, all in violation of the contractual guarantees provided to Plaintiff by Defendant in the employment handbook and other contractual documents.
37. Defendant's conduct, by and through its agents, was done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract.

38. As a result of Defendant's breach of contract, Plaintiff has suffered actual, compensatory, physical, mental, emotional and consequential damages stemming from the breach and other such damages as are allowable by law.

## COUNT 3
## BREACH OF CONTRACT ACCOMPANIED BY A FRAUDULENT ACT

39. Each and every allegation set forth above is hereby repeated as if fully incorporated herein.
40. Defendant, by and through its agents, has failed to fulfill its obligation under its own written policy and has breached the terms thereof by reason of an intentional design on its part to defraud Plaintiff.
41. In furtherance of such intentional design, Defendant, through its agents, intentionally and maliciously placed Plaintiff in a position of being subjected to extreme racial harassment and disparate treatment under the guise of protecting him from the same. Defendant ensured Plaintiff that he would not be subjected to the racially disparate treatment, harassment, and other policy violations which Defendant continuously meted out to Plaintiff. It became readily apparent to Plaintiff that Defendant's false reassurances were fraudulent as Defendant's continual violations of their own policy demonstrated.
42. Defendant's conduct, by and through its agents, was done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract and handbook.
43. As a result of Defendant's race discrimination and exposure of Plaintiff to fraudulent breaches of contract, Plaintiff has suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiff also believes that a reasonable amount of punitive damages be levied against Defendant on account of its unlawful treatment of Plaintiff and fraudulent contractual breaches.

## COUNT 4
## RETALIATION (Section 1981)

44. Each and every allegation set forth herein above is hereby repeated as fully incorporated herein.
45. Plaintiff was repeatedly subjected to and protested the violations of his federally protected rights within the Defendant's administrative structure all to no avail as such complaints merely subjected Plaintiff to being relocated in a retaliatory manner and to a continuance of unlawful racial harassment and retaliation as Defendant thereafter blocked Plaintiff from numerous promotional opportunities.
46. After the Plaintiff informed Defendant of the racial harassment and mistreatment that Plaintiff daily was exposed to (protected complaints), Defendant retaliated against Plaintiff by practicing a continuing pattern of animus, harassment, and denial of opportunities and relocations.
47. Due to the retaliatory acts of the Defendant, its agents and employees, Plaintiff is entitled to injunctive relief and/or civil damages, back wages, plus interest, payment for lost wages, and punitive damages.
48. Accordingly, Plaintiff is entitled to compensatory and punitive damages as a result thereof as Plaintiff has suffered damages in the form of actual, compensatory, consequential,

physical, mental, emotional, and other damages. Plaintiff also believes that a reasonable amount of punitive damages be levied against Defendant on account of its unlawful treatment of Plaintiff and fraudulent contractual breaches.

## COUNT 5
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

49. Each and every allegation set forth herein above is hereby repeated as fully incorporated herein.
50. Defendants engaged in extreme and outrageous conduct towards Plaintiff with the intention to cause or with reckless disregard for the probability of causing Plaintiff to suffer severe emotional distress. To the extent that said outrageous conduct was perpetrated by certain individuals within Defendant's organization, the Defendant adopted and ratified said conduct with a wanton and reckless disregard of the deleterious consequences to Plaintiff. As a proximate result of said conduct, Plaintiff has suffered and continues to suffer extreme mental distress, humiliation, anguish, and emotional and physical injuries, as well as economic losses, all to his damage in amounts to be proven at trial.
51. Defendant committed the acts alleged herein maliciously, fraudulently and oppressively with the wrongful intention of injuring Plaintiff, with an improper and evil motive amounting to malice and in conscious disregard of Plaintiff's rights, entitling Plaintiff to recover punitive damages in amounts to be proven at trial.
52. Plaintiff is entitled to a judgment against Defendant for actual damages, punitive damages, the costs of this suit, and for such other relief as may be allowed by law.

## COUNT 6
## FMLA VIOLATION- RETALIATION

53. Each and every allegation set forth above is hereby repeated as fully incorporated herein.
54. Pursuant to the Family Medical Leave Act (FMLA), Defendant was a covered employer under the act. Plaintiff was an employee and eligible to take FMLA leave. Defendant employed more than fifty (50) employees. Further, Plaintiff worked for Defendant at least twelve (12) months prior to when he needed leave and worked for at least 1,250 hours of service.
55. Defendant knowingly and willfully retaliated against Plaintiff with respect to his employment due to his taking covered FMLA Leave.
56. Specifically, upon Plaintiff's return to work from FMLA Leave in January 2018, Plaintiff was exposed to continuous retaliation in the form of denial of promotional opportunities, retaliatory job placements, and a continuous stream of hostile and harassing behavior as indicated fully above.
57. Accordingly, Plaintiff is entitled to compensatory and punitive damages as a result thereof as Plaintiff has suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiff also believes that a reasonable amount of punitive damages be levied against Defendant on account of its unlawful treatment of Plaintiff and fraudulent contractual breaches, and that he be awarded his attorney's fees related to this action.

# JURY TRIAL REQUESTED

58. Plaintiff requests a jury trial.

# PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Honorable Court declares that Defendant's actions complained of herein violated the rights guaranteed to Plaintiff and issue its judgment:

(1) Declaring the actions complained of herein illegal;

(2) Issuing an injunction enjoining the Defendant, its agents, employees, successors, attorneys and those acting in concert or participation with the Defendant, and at its direction from engaging in the unlawful practices set forth herein and any other employment practices shown to be in violation of 42 USC Section 1981, the Family Medical Leave Act 42 U.S.C. §2601, *et. seq.*), and the common laws of the State of South Carolina to include Plaintiff's claim for intentional infliction of emotional distress, breach of contract, and breach of contract accompanied by a fraudulent act.

(3) Awarding Plaintiff compensatory and punitive damages for each Cause of Action contained herein, which the jury should find appropriate as a result of the Defendant's unlawful discriminatory actions taken as the result of Plaintiff's race and other pled causes of action; including mental anguish, pain and suffering, harm to Plaintiff's economic opportunities, any back pay, front pay and future earnings with cost of living adjustments, prejudgment interest, fringe benefits, and retirement benefits;

(4) Awarding Plaintiff his costs and expenses in this action, including reasonable attorney fees, and other litigation expenses; and

(6) Granting such other and further relief as may be just and necessary to afford complete relief to the Plaintiff as this Court may deem just and proper.

[Signature on Following Page]

Respectfully submitted,

/s/ Donald Gist_____
Donald Gist, Esquire Federal ID# 7178
Aaron Wallace, Esquire Federal ID # 11469
***GIST LAW FIRM, P.A.***
4400 North Main Street (29203)
Post Office Box 30007
Columbia, South Carolina 29230
Tel. (803) 771-8007
Fax (803) 771-0063
Email: dtommygist@yahoo.com
      aaronwallace.gistlawfirm@gmail.com

June 4, 2019