# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Curtis Anthony,<br><br>    Plaintiff,<br><br>vs.<br><br>The Boeing Company,<br><br>    Defendant. | Case No. 2:19-CV-01656-DCN-BM<br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF RULE 12(b)(6) PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |

The Boeing Company ("Boeing" or "Defendant"), by and through its undersigned counsel, respectfully submits the following Memorandum in Support of its Rule 12(b)(6) Partial Motion to Dismiss Plaintiff's Complaint.

## I. INTRODUCTION

Boeing employed Plaintiff Curtis Anthony ("Plaintiff") in May 2011.[1] In his Complaint, Plaintiff claims that he suffered racial harassment, discrimination, and retaliation by Boeing's employees off and on starting on or about April 2017 to March 2019, in violation of Boeing's policies and procedures.

With this motion and supporting memorandum, Boeing seeks the dismissal of several claims set forth in Plaintiff's Complaint because his allegations—even assuming they are true, which they are not—fail to state a viable claim for relief under South Carolina common law. Specifically:

(A) Plaintiff's breach of contract claim should be dismissed because Boeing's policies and procedures did not give rise to a "contract" altering Plaintiff's at-will employment status;

---

[1] Plaintiff continues to be employed at Boeing as a Quality Inspector.

(B)     Plaintiff's breach of contract accompanied by a fraudulent act claim should be dismissed because Boeing's policies and procedures did not give rise to a "contract" and Plaintiff failed to allege with particularity fraudulent intent or acts; and

(C)     Plaintiff's intentional infliction of emotional distress claim should be dismissed because the claim falls within the preemptive scope of the "exclusivity provision" of the S.C. Workers' Compensation Act ("SCWCA").

## II.     PROCEDURAL BACKGROUND AND RELEVANT ALLEGATIONS OF THE COMPLAINT

On June 7, 2019, Plaintiff filed a Complaint against Boeing, alleging six causes of action. (ECF No. 1, ¶¶ 20–57). Plaintiff mailed the Summons and Complaint to Boeing on June 17, 2019.

Assuming, solely for purposes of this motion and supporting memorandum, that the allegations of Plaintiff's Complaint are true, which they are not, the alleged facts and arguments relevant to this Motion are as follows:

- Boeing hired Plaintiff as a Quality Inspector on May 2011. (*Id.* at ¶ 6).

- Plaintiff alleges that Boeing allowed an atmosphere of "racial hostility and harassment towards African Americans" (*id.* at ¶ 8) and he became a victim to targeted racial harassment of an "intentionally extreme and outrageous nature" starting on or about May 2017 up to March 2019. (*Id.* at ¶¶ 8–9, 17).

- According to Plaintiff, Boeing acted in complete indifference to Plaintiff's complaints in direct violation of Boeing's own policies and procedures. (*Id.* at ¶ 10).

- Plaintiff claims he suffered mental anguish and emotional distress. (*Id.* at ¶ 9). Due to the extreme and outrageous racial hostility, Plaintiff "was forced to go out on FMLA leave to receive treatment" for his distress. (*Id.* at ¶ 13). In addition, Plaintiff

2

- enrolled in Boeing's Employee Assistance Program because he relapsed "with respect to his sobriety." (*Id.* at ¶ 13).

- On or about March 2019, Plaintiff alleges Boeing's "workers and/or agents" placed a noose right over his desk designed to inflict emotional distress on Plaintiff. (*Id.* at ¶ 17). After immediately reporting it to Human Resources, Management, and to Brad Zaback, Boeing's VP and General Manager of the 787 Program, Plaintiff claims they provided him with "false and pretextual assurances" that it would cease. (*Id.* at ¶ 17).

- This incident resulted in more FMLA leave, medical treatment, counseling, physical, mental, emotional, and financial damages, which has reduced his quality of life. (*Id.* at ¶ 19).

- Plaintiff alleges that Boeing's response to these and similar alleged incidents violated an implied employment contract based upon an alleged Employee Handbook, "which definitely assures employees of their right to report harassment and bullying, and an anti-retaliation clause." (*Id.* at ¶ 31). Plaintiff further alleges the Employee Handbook confirms that Boeing is "an Equal Opportunity Employer, when it declares that there will be no discrimination as to race, color, gender, age, religion, disability, national origin, or veteran status" and that Boeing "will comply with the requirements of the law implementing equal employment decisions." (*Id.* at ¶ 32). And, Plaintiff contends that, through these portions of the handbook, "Plaintiff and Defendant entered into a binding and valid contract. . . ." (*id. at* ¶ 33).

- Plaintiff also conclusively alleges that Boeing fraudulently breached this alleged implied contract: "Defendant, by and through its agents, has failed to fulfill its obligations under its own written policy and has breached the terms thereof by reason of intentional design on its part to defraud Plaintiff." (*Id.* at ¶ 40).
- Further, Plaintiff claims that through Boeing's alleged conduct it intentionally inflicted emotional distress. "Defendants [sic] engaged in extreme and outrageous conduct towards Plaintiff with the intention to cause or with reckless disregard for the probability of causing Plaintiff to suffer severe emotional distress." (*Id.* at ¶ 50).

Boeing's motion seeks dismissal of Plaintiff's second (breach of contract), third (breach of contract accompanied by a fraudulent act), and fifth (intentional infliction of emotional distress) causes of action **<u>with prejudice</u>**.[2]

### III. <u>LEGAL STANDARD</u>

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss claims for relief in a complaint, upon a defendant's motion, when a plaintiff has failed "to state a claim upon which relief can be granted." In order for a complaint "[t]o survive a motion to dismiss, [it] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Two working principles guide the "plausibility standard" articulated in *Twombly* and *Iqbal*. First, while the Court must accept all allegations in a complaint as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to

---

[2] Boeing reserves the right to seek summary judgment against all of Plaintiff's causes of action.

4

withstand a 12(b)(6) motion, because "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 556 U.S. at 678, 686.

Second, to the extent the Complaint has well-pleaded factual allegations, a claim is facially plausible when the factual content allows the Court to reasonably infer that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged——but it has not 'show[n]'——'that the pleader is entitled to relief.'" *Whitt v. Seterus, Inc.*, 2017 WL 1020883, at *2 (D.S.C. Mar. 16, 2017).

However, when a Complaint alleges fraud in a claim for relief, Rule 9(b) of the Federal Rules of Civil Procedure requires a heightened standard wherein "a party must state with particularity the circumstances constituting fraud or mistake."

## IV. LEGAL ARGUMENT

Plaintiff's claims on breach of contract, breach of contract accompanied by a fraudulent act, and intentional infliction of emotional distress fail to state a claim upon which relief may be granted and should be dismissed with prejudice.

### A. **Plaintiff's Breach of Contract Claim Should be Dismissed Because He Failed to Plead Sufficient Facts to Establish an Employment Contract or to Overcome the Presumption of At-Will Employment.**

Boeing is entitled to dismissal of Plaintiff's second cause of action, breach of contract (ECF No. 1, ¶¶ 30–38), because Plaintiff fails to set forth facts sufficient to allege any contractual relationship with Boeing that would alter his at-will employment status.

To maintain a claim for breach of contract, Plaintiff must allege facts sufficient to establish:

(1) the existence of a contract, (2) Boeing's breach of the alleged contract, and (3) damages caused by such breach. *Hotel & Motel Holdings, LLC v. BJC Enterprises, LLC*, 414 S.C. 635, 654, 780 S.E.2d 263, 274 (Ct. App. 2015) (citing to *Floyd v. Country Squire Mobile Homes, Inc.*, 287 S.C. 51, 53–54, 336 S.E.2d 502, 503–04 (Ct. App. 1985)). In South Carolina, the law presumes employees are at-will, and a plaintiff must plead sufficient factual allegations establishing the existence of an employment contract beyond the at-will relationship to survive a Rule 12(b)(6) motion to dismiss a breach of employment contract. *See Prescott v. Farmer's Tel. Co–Op., Inc.*, 335 S.C. 330, 516 S.E.2d 923, 927, n.8 (S.C. 1999) (stating South Carolina's presumption of at-will employment); *see also Cook v. Dolgencorp, LLC*, 2013 WL 5408670, at *8 (D.S.C. Sept. 25, 2013) (citing the rule that Plaintiff must plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship).

Plaintiff has failed to meet this standard. Essentially, Plaintiff claims in conclusory terms that Boeing's policies and procedures created a "binding and valid contract" between both parties. (ECF No. 1, ¶ 33). To that end, when Plaintiff experienced alleged harassment, retaliation, racial discrimination, and "denied" promotional opportunities, Boeing supposedly breached its contract with him. (*Id.* at ¶¶ 31–36). The law does not support that conclusion.

Importantly, Plaintiff alleges a breach of **protection** and not a breach of **employment status**. All of Plaintiff's allegations regarding Boeing's breach relate to "the promise of being *protected* from race discrimination, retaliation, and racial harassment," (*id.* at ¶ 34) (emphasis added), none of which promises Plaintiff "any specific duration or that a particular process must be followed before an employee may be fired." *Hessenthaler v. Tri-Cty. Sister Help, Inc.*, 365 S.C. 101, 109–110, 616 S.E.2d 694, 698 (2005). Boeing is statutorily required to be nondiscriminatory. This does not rise to a contractual obligation.

1. **Boeing's policies and procedures do not alter Plaintiff's at-will status.**

Neither a handbook nor a policy automatically alter the at-will status of the employee, nor does the absence of a conspicuous disclaimer, absent "enforceable promises stated in mandatory language," alter that status. *Anthony v. Atlantic Group, Inc*., 909 F. Supp. 2d 455, 467 (D.S.C. 2012), *aff'd* (July 12, 2013). Under South Carolina law, "[t]o be enforceable in contract, general policy statements must be definitive in nature, promising specific treatment in specific situations." *Hessenthaler*, 616 S.E.2d at 698; *see also Yon v. Reg'l Med. Ctr*., 2016 WL 11410314, at *25 (D.S.C. Feb. 10, 2016), *report and recommendation adopted*, 2016 WL 1178202 (D.S.C. Mar. 28, 2016) ("When reviewing company policies in a breach of contract action, the court must consider whether, *as a matter of law*, the policy contains a promise that may be the basis of a contract. It must be considered whether a handbook or policy contains 'mandatory language sufficient to alter the presumption in South Carolina of an at-will employment relationship.'") (emphasis in the original) (internal citations omitted). Contrary to Plaintiff's claim, Boeing's policies referenced in the Complaint did not alter Plaintiff's at-will status based on South Carolina jurisprudence.

      a. **Plaintiff does not allege sufficient facts to any specific policies or procedures that contain promises or mandatory terms to overcome the presumption of at-will employment.**

Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. Plaintiff has failed to point to any specific provision within Boeing's policies above the speculative level.

In *Smith v. Palmetto Denture, P.A*., the court dismissed Plaintiff's breach of contract claims because she failed to allege specific facts to overcome the at-will employment presumption and thus her case was dismissed with prejudice. 2018 WL 3611368, at *5 (D.S.C. July 27, 2018). Similar to the case at hand, plaintiff did not assert any specific factual allegations regarding the terms within the handbook nor did she attach the handbook for the court to consider in connection

to her allegations. *Id.* at *3. Although plaintiff unsuccessfully argued that her employment status was altered by "mandatory termination policies and procedures," this Court found that the "allegations refer generally to the Employee Handbook and to topics in the Employee Handbook. But the allegations fail to specify the actual provisions of the Employee Handbook at issue and fail to specify how such provisions create mandatory obligations." *Id.* at *4 (internal citations omitted). "[G]eneral and conclusory allegations were not sufficient to establish the existence of an employment contract and granted the defendant's motion to dismiss." *Id.*

Likewise here, throughout the "Facts" section of his Complaint, Plaintiff alleges no specific enforceable promise related to a specific policy or procedure that gave rise to mandatory language. (ECF No. 1, ¶¶ 6–19). Rather, Plaintiff formulaically alleges "direct violation of Defendant's own policies and procedures (i.e. Plaintiff's contract of employment)" (*Id.* at ¶ 10); "breaches of Defendant's policies on race discrimination and retaliation (i.e. Plaintiff's contract)" (*Id.* at ¶ 11); "policies regarding promotional opportunities were violated" (*Id.* at ¶ 15); and "violations of the law and their own policies and procedures" (*Id.* at ¶ 19). It appears as if Plaintiff felt no need to point to any particular language, much less mandatory, binding language. *See Sellers v. S.C. Autism Soc., Inc.*, 861 F. Supp. 2d 692, 698 (D.S.C. 2012) (dismissing a claim for breach of contract for failing to "adequately identif[y] the relevant policies and procedures or otherwise offer[] factual allegations which might support a claim for breach of contract based on her termination.").

Because Plaintiff has failed to plead sufficient facts, not merely general allegations, his breach of contract fails to state a claim upon which relief can be granted.

      b.    **Moreover, Boeing's actual policies and procedures do not alter Plaintiff's at-will status because they are general policy statements containing no promises or mandatory language.**

Plaintiff references Boeing's "handbook" multiple times in his Complaint (ECF No. 1, ¶¶

31, 33, 35, 42), but to be clear, Boeing does not have an "Employee Handbook." Also, Plaintiff refers in his Complaint to Boeing "policies." The two applicable policies are Boeing's EEO policy and the "Workplace and Sexual Harassment" procedure.[3] Courts have repeatedly held that general policy statements, such as these, do not constitute an implied employment contract or alter the at-will relationship.

Boeing's EEO policy is a general policy statement reciting its statutory obligations to be nondiscriminatory. "The South Carolina Supreme Court has explicitly held that such general EEO statements do not alter the at-will relationship or give rise to a breach of contract claim." *Pauling v. Greenville Transit Auth.*, 2006 WL 3354512, at *12 (D.S.C. Nov. 16, 2006). As explained below, Boeing's EEO policy is a general policy statement containing no promises. The relevant portions of the EEO policy state the following:

> It is the policy of The Boeing Company to attract and retain the best qualified people available without regard to race, color, religion, national origin, gender, sexual orientation, gender identity, age, physical or mental disability, genetic factors or military/veteran status. This nondiscrimination policy applies to applicants as well as employees and covers all terms and conditions of employment,

---

[3] Boeing permissibly attaches two exhibits in this memorandum as referenced by Plaintiff's Complaint: "Workplace and Sexual Harassment" and "Equal Employment Opportunity." Plaintiff's reference to these policies in his Complaint allows Boeing the opportunity to attach such policies to its memorandum without converting it into a motion for summary judgment. *See Boozer v. MCAS Beaufort*, 2015 WL 1640473, at *3 (D.S.C. Apr. 9, 2015) ("Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference."); *see also Deas v. Prudential Ins. of Am.*, 2018 WL 1993869, at *2, n.2 (D.S.C. Apr. 26, 2018). Even if the Plaintiff failed to attach the policies in the complaint, the court can still dismiss the claim because Plaintiff has failed to allege how any particular policy or procedure has overcome the presumption of at-will employment and has restricted Boeing's ability to terminate at any time for any reason. *See Brailsford v. Fresenius Med. Ctr. CNA Kidney Centers LLC*, 2015 WL 4459032, at *4 (D.S.C. July 21, 2015) (finding that despite the fact that Plaintiff did not attach the handbook nor was it part of the record, "none of the provisions that Brailsford cites—including those related to sick leave policy and voluntary resignation—'impose a limitation on the [Brailsford's] (sic) right to terminate an employee at any time, for any reason.' *Grant*, 634 S.E.2d at 20.").

9

> including recruiting, hiring, transfers, promotions, terminations, compensation and benefits. Discrimination or harassment based on any of the above factors is prohibited, as is retaliation against a person who has made a complaint or given information regarding possible violations of this policy.
>
> The Boeing Company is also committed to undertaking affirmative steps to promote the employment and advancement of minorities, women, people with disabilities, and covered veterans.

(Exhibit A).

In *Hessenthaler*, the South Carolina Supreme Court held that a nondiscrimination provision[4] within an employee handbook does not constitute an enforceable promise altering the at-will nature of an employment relationship. 365 S.C. at 109–110, 616 S.E.2d at 698. The Court contrasted mandatory, progressive discipline procedures from the provision at issue, and explained that "a general policy statement of nondiscrimination does not create an expectation that employment is guaranteed for any specific duration or that a particular process must be followed before an employee may be fired." *Id*. Meaning, a general policy does not alter the employer's ability to terminate at-will.

Similar in this case, Boeing's EEO policy is a general policy statement, informing its employees of its compliance with federal and state laws on equal employment opportunities. If nothing else, this language is aspirational. From a legal perspective, striving to achieve something does mean it guarantees it. *See Pauling*, 2006 WL 3354512, at *12 ("Instead of being mandatory, the [EEO] language recited by the plaintiff in this case is aspirational in nature—what the defendant would strive to provide, generally. In fact, the statement indicates that the defendant will

---

[4] There, the policy stated that "[the Shelter] is an equal opportunity employer. All decisions, including hiring, training, and promotion, are made without regard to race, color, religion, national origin, sex, age, handicap, sexual preference, or any other protected status." *Hessenthaler*, 365 S.C. at 110, 616 S.E.2d at 698.

"promote" an atmosphere free of discrimination; it does not guarantee such an atmosphere.");[5] *see also Ford v. Musashi SC, Inc.*, 2008 WL 4414385, at *2 (D.S.C. Sept. 23, 2008) (granting dismissal of breach of contract claim when Plaintiff failed to allege enforceable handbook promises apart from Defendant's promise to be fair and nondiscriminatory which is statutorily required.).

Like the EEO policy, the Workplace and Sexual Harassment procedure does not alter Plaintiff's at-will employment status, as a matter of law. The Workplace and Sexual Harassment procedure generally describes its purpose as follows:

> This procedure affirms the Company's commitment to providing a work environment that is free from harassment, including sexual or sex (gender)-based harassment. Harassment of any kind will not be tolerated by employees, suppliers, customers, or others.
>
> This procedure does not constitute a contract or contractual obligation, and the Company reserves the right, in its sole discretion, to amend, modify, or discontinue its use without prior notice, notwithstanding any person's acts, omissions, or statements to the contrary.

(Exhibit B).

In *Nelson v. Medical University Hospital Authority*, the court summarily dismissed plaintiff's breach of contract and breach of contract accompanied by a fraudulent act claims, specifically finding that typical anti-discrimination and anti-retaliation policies are not sufficient to form a contract of employment between parties. 2018 WL 4204243, at *1 (D.S.C. Aug. 7, 2018), *aff'd*, 764 F. App'x 383 (4th Cir. 2019). *See Oroujian v. Delfin Grp. USA LLC*, 57 F. Supp. 3d 544, 558 (D.S.C. 2014) (dismissing a breach of contract claim based on, among other findings, that "the language cited by the Plaintiff in his Amended Complaint is typical of antidiscrimination

---

[5] There, the policy stated defendant "provides an atmosphere which will promote professional and personal growth without regard to race, color, creed, national origin, sex, age, disability, or veteran status." *Pauling v. Greenville Transit Auth.*, 2006 WL 3354512, at *11 (D.S.C. Nov. 16, 2006).

language found in most employee handbooks, and has routinely been held by courts not to, by itself, constitute a contract.").

Here, Plaintiff fails to adequately allege that Boeing's EEO policy or Workplace and Sexual Harassment procedure included mandatory terms or language, such as a definite term of employment, that he relied on for employment status. *See Nelson v. Charleston Cty. Parks & Recreation Comm'n*, 362 S.C. 1, 7, 605 S.E.2d 744, 747 (Ct. App. 2004) (holding that a policy can give rise to a contract claim only if the employer phrases the document's language in mandatory terms giving rise to a promise, an expectation and a benefit to an employee) (internal quotation marks and citation omitted). For the court to find mandatory language, the policy must be "definitive in nature," which Plaintiff has failed to factually allege. *Staley v. Computer Scis*. Corp., 2014 WL 6473703, at *11 (D.S.C. Nov. 18, 2014) (quoting *Anthony v. Atl. Grp., Inc*., 909 F. Supp. 2d 455, 467 (D.S.C. 2012) (internal quotation marks omitted).

Plaintiff simply cannot, as a matter of law, overcome the presumption of at-will employment through policies and procedures like Boeing's EEO policy or Workplace and Sexual Harassment procedure. Multiple plaintiffs have made the same allegations in the past, and this court has continually dismissed the claims in favor of the employer. For instance, in *Brailsford v. Fresenius Medical Center CAN Kidney Centers*, the court granted defendants' motion to dismiss plaintiff's breach of contract claims. 2015 WL 4459032, at *1 (D.S.C. July 21, 2015). In reviewing the allegations made regarding policies within the handbook, including anti-retaliation policies, the court found no mandatory language sufficient to form an employment contract. *Id.* at *4. Similarly in *Yon v. Regional Medical Center*, the court analyzed an employer's Code of Conduct policy with a four-step reporting process and a non-retaliation policy and granted defendant's summary judgment motion on plaintiff's breach of contract claims. 2016 WL 1178202, at *13

(D.S.C. Mar. 28, 2016). Plaintiff alleged that the steps listed in the employer's policy and the failure to conduct an investigation when she brought up concerns of a racially hostile work environment created a breach of contract. *Yon v. Reg'l Med. Ctr.*, 2016 WL 11410314, at *25 (D.S.C. Feb. 10, 2016), *report and recommendation adopted*, 2016 WL 1178202 (D.S.C. Mar. 28, 2016). This Court found no mandatory language in the policies and instead distinguished them from progressive disciplinary policies that restrict the employer's ability to terminate at any time for any reason. *Id.* at *2–27.[6]

Clearly, Plaintiff cannot establish that an enforceable "contract" arose from Boeing's general policies and procedures altering Boeing's ability to terminate Plaintiff's employment. For the reasons stated above, Plaintiff's breach of contract claim should be dismissed with prejudice as a matter of law.

2. **Boeing's policies and procedures did not create a unilateral contract of employment.**

Even if Plaintiff argues that Boeing's policies and procedures created an implied or unilateral contract with Plaintiff, Plaintiff fails to allege facts sufficient to establish the elements of such contract. Under South Carolina law, a "unilateral contract has the following three elements: 1) a specific offer, 2) communication of the offer to the employee, and 3) performance of job duties in reliance on the offer." *Towles v. United HealthCare Corp.*, 338 S.C. 29, 38, 524 S.E.2d 839, 844 (Ct. App. 1999); *see also Moss v. City of Abbeville*, 740 F. Supp. 2d 738, 755 (D.S.C. 2010) ("[T]he mere existence of an employee handbook does not mean that there is an employment contract. For a contract to be created, the employee must be aware of promises in the handbook, must have relied on (and continued work in reliance on) those promises, and the promises must

---

[6] Boeing's policy related to disciplinary action, which is not the factual allegation in the case at hand, contains a conspicuous disclaimer pursuant to S.C. CODE ANN. § 41–1–110 (2012).

13

restrict the right to discharge.") (internal citation and quotation marks omitted).

Therefore, Plaintiff cannot establish that an enforceable "contract" arose from Boeing's policies and procedures merely by asserting that Boeing issued policies that he claims were "violated" upon harassment, discrimination, and retaliation. As argued before, Plaintiff must factually allege both that Boeing communicated mandatory "promises" restricting its *right to discharge*, and that Plaintiff relied on those alleged "promises" in *continuing to work* at Boeing. Plaintiff's threadbare implications that he relied on Boeing's "promises" to *protect him from* discrimination, harassment, and retaliation do not relate to discharge or disciplinary actions.

Further, "South Carolina common law requires that, in order to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to all essential and material terms of the agreement." *Player v. Chandler*, 299 S.C. 101, 105, 382 S.E.2d 891, 893 (1989). Plaintiff raises no factual allegations that Boeing, by instituting the policies and procedures, intended to create a contract with Plaintiff.

Because Boeing's policies and procedures do not create a unilateral contract, as a matter of law, Plaintiff's breach of contract claim fails entirely.

> **B.** **Plaintiff's Breach of Contract Accompanied by a Fraudulent Act Claim Should be Dismissed Because He Failed to Plead Sufficient Facts to Establish an Employment Contract and Failed to Plead Fraud with Particularity.**

Boeing is entitled to dismissal of Plaintiff's third cause of action, breach of contract accompanied by a fraudulent act (ECF No. 1, ¶¶ 39–43), because Plaintiff failed to plead facts sufficient to establish a breach of contract, much less facts establishing Boeing's fraudulent intent and fraudulent acts accompanying the alleged breach of contract.

To state a viable claim for breach of contract accompanied by a fraudulent act, Plaintiff must plead facts establishing the following elements: (1) a breach of contract, (2) fraudulent intent relating to the breaching of the contract, not merely to its making, and (3) a fraudulent act

accompanying the breach. *Hotel & Motel Holdings, LLC v. BJC Enterprises, LLC*, 414 S.C. 635, 654, 780 S.E.2d 263, 274 (Ct. App. 2015) (citing to *Floyd v. Country Squire Mobile Homes, Inc.*, 287 S.C. 51, 53–54, 336 S.E.2d 502, 503–04 (Ct. App. 1985)). Further, Rule 9(b) of the Federal Rules of Civil Procedure requires a heightened standard when pleading fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See Advanced Pain Therapies, LLC v. Hartford Fin. Servs. Grp., Inc.*, 2014 WL 4402800, at *3 (D.S.C. Sept. 3, 2014) ("Because Plaintiff alleges breach of contract accompanied by a fraudulent act, Plaintiff must plead the allegations of fraud with particularity as required by the heightened pleading standard[.]").

Plaintiff seems to allege Boeing's "false assurances" that he would not be subjected to "racially disparate treatment, harassment, and other policy violations which Defendant continuously meted out" were fraudulent and a breach of Boeing's policies "of an intentional design on its part to defraud Plaintiff." (ECF No 1, ¶¶ 40–41).

1. **Plaintiff has neither established a contract nor a breach.**

Plaintiff's failure to state a viable claim for breach of contract is equally fatal to his claim for breach of contract accompanied by a fraudulent act. *See Amason v. PK Mgmt., LLC*, 2011 WL 1100169, at *6 (D.S.C. Mar. 23, 2011) (granting defendant's motion to dismiss breach of contract accompanied by a fraudulent act because plaintiff did not plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship, making the entire claim fail at the outset.); *see also Pauling v. Greenville Transit Auth.*, 2006 WL 3354512, at *12 (D.S.C. Nov. 16, 2006) (granting summary judgment because the court, among other things, concluded on the breach of contract claim that the employee handbook was not a binding contract and plaintiff could not base a claim of breach of contract accompanied by a fraudulent act on that document, thus failing to satisfy the initial element of her claim); *see also Anthony*, 909 F. Supp.

2d at 472 (granting summary judgment on a breach of contract accompanied by a fraudulent act when the court found no contract existed, and no subsequent breach, causing the claim to fail); *see also Yon*, 2016 WL 1178202, at *14–15 (granting summary judgment on the breach of contract accompanied by a fraudulent act because plaintiff failed to overcome the presumption of at-will employment nor provide sufficient factual support to sustain the breach of contract claim.); *see also Brailsford*, 2015 WL 4459032, at *5 ("Since Brailsford has failed to plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship, her claim for breach of contract accompanied by a fraudulent act also fails."); *see also Smith v. Palmetto Denture Care, P.A.*, 2018 WL 3611368, at *5 (D.S.C. July 27, 2018) ("The Court has already addressed Plaintiff's arguments regarding the existence of a contract and found that Plaintiff has failed to state a claim. Therefore, this defect necessarily is fatal to Plaintiff's breach of contract with fraudulent intent claim."); *see also Holloman v. S.C. Dep't of Mental Health*, 2016 WL 1128023, at *4 (D.S.C. Mar. 23, 2016) ("To prevail on a breach of contract with fraudulent intent claim, there must first be a breach of contract. . . . [T]he Magistrate Judge properly concluded that there could be no breach of contract."). The law remains clear on this argument.

2. **Plaintiff fails to plead facts sufficient to allege Boeing's fraudulent intent and a fraudulent act(s) separate and independent from its alleged breach of contract.**

Even if Plaintiff can make a showing—which he cannot—that a contract existed, this claim fails as a matter of law due to a blatant absence of particular facts showing fraud. A claim for breach of contract accompanied by fraudulent act "requires proof of fraudulent intent relating to the breaching of the contract, not merely to its making." *Ball v. Canadian American Exp. Co., Inc.*, 314 S.C. 272, 276, 442 S.E.2d 620, 623 (Ct. App. 1994). "Fraudulent intent is normally proved by circumstances surrounding the breach." *Land v. Wal-Mart Stores E., L.P.*, 2008 WL 1766723, at *8 (D.S.C. Apr. 15, 2008).

16

Plaintiff's claim fails because the Complaint broadly speculates, rather than specifies, the alleged fraudulent intent, either to the making of the "contract" or relating to the "breach" of the "contract." Other than listing legal conclusions of Boeing's "intentional design on its part to defraud Plaintiff" (ECF No. 1, ¶ 40) and that Boeing's "false reassurances were fraudulent" (*Id.* at ¶ 41), Plaintiff makes no general factual allegation, much less a particular one as required by law, to support that conclusion.

As to the last element, a "fraudulent act is any act characterized by dishonesty in fact or unfair dealing." *Conner v. City of Forest Acres*, 348 S.C. 454, 466, 560 S.E.2d 606, 612 (2002). "The fraudulent act may be prior to, contemporaneous with, or subsequent to the breach of contract, but it must be connected with the breach itself and cannot be too remote in either time or character." *Zinn v. CFI Sales & Mktg., Ltd*, 415 S.C. 93, 111, 780 S.E.2d 611, 621 (Ct. App. 2015) (internal citation and quotation marks omitted). Plaintiff appears to factually allege that the violations of Boeing's policies and procedures constituted fraud, yet gives no fact to support a subsequent fraudulent act. *See Minter v. GOCT, Inc.*, 322 S.C. 525, 530, 473 S.E.2d 67, 70–71 (Ct. App. 1996) (affirming dismissal when plaintiff merely alleged facts supporting fraudulent intent underlying the alleged breach without identifying an independent fraudulent act."). Based on the foregoing, Plaintiff's claim fails as a matter of law.

### C. The Intentional Infliction of Emotional Distress Claim Should be Dismissed Because the Exclusive Remedy, if any, is Workers' Compensation.

Boeing is entitled to dismissal of Plaintiff's fifth cause of action, intentional infliction of emotional distress (ECF No. 1, ¶¶ 49–52), because his exclusive remedy, if any, is through the South Carolina Workers' Compensation Act ("SCWCA").

SCWCA "exclude[s] all other rights and remedies" other than those afforded by the Act on account of work-related personal injuries. The "exclusivity provision" of the SCWCA states the

following:

> The rights and remedies granted by this title to an employee when he and his employer have accepted the provisions of this title, respectively, to pay and accept compensation on account of personal injury or death by accident, *shall exclude* all other rights and remedies of such employee . . . *at common law or otherwise*, on account of such injury, loss of service or death.

S.C. CODE § 42-1-540 (1985) (emphasis added); *see also Sabb v. S.C. State Univ.*, 567 S.E.2d 231, 234 (S.C. 2002). Further, the law presumes every employee to be bound by the SCWCA and have accepted the "compensation for personal injury or death by accident arising out of and in the course of the employment." S.C. CODE § 42-1-310 (1976).

The South Carolina Supreme Court has broadly stated that the exclusivity provision "precludes tort recovery against employers." *Glass v. Dow Chem. Co.*, 482 S.E.2d 49, 50 n.1 (S.C. 1997); *see also Mendenall v. Anderson Hardwood Floors, LLC*, 738 S.E.2d 251, 253–54 (S.C. 2013) (holding that the exclusivity provision prohibits "tort suits against the employer and limit[s] the injured employee's rights and remedies to those provided by the [SCWCA]."). Moreover, the exclusivity provision must be "construed liberally in favor of coverage." *Peay v. U.S. Silica Co.*, 437 S.E.2d 64, 65 (1993) (citing *Mauldin v. Dyna-Color/Jack Rabbit*, 416 S.E.2d 639 (S.C. 1992)).

In addition, the "scope of the Act is further limited by the requirement that an injury must arise out of and in the course of employment. S.C. CODE ANN. § 42-1-160 (1985)." *Loges v. Mack Trucks, Inc.*, 308 S.C. 134, 138, 417 S.E.2d 538, 540 (1992). "'In the course of employment' refers to the time, place and circumstances under which the accident occurs. . . . The phrase 'arising out of' refers to the origin of the cause of the accident." *Loges*, 308 S.C. at 138, 417 S.E.2d at 540 (internal citation omitted). Throughout his entire Complaint, Plaintiff alleges he "suffered mental anguish and emotional distress" while he was working for Boeing. (ECF No. 1, ¶¶ 9–19). Clearly, this claim falls under the purview of the SCWCA.

Relevant here, the South Carolina Supreme Court has held that an intentional infliction of emotional distress claim is a personal injury within the scope of the SCWCA, and as such, the claim is barred from other forms of recovery. *See Dickert v. Metropolitan Life Ins. Co.*, 311 S.C. 218, 220, 428 S.E.2d 700, 701 (S.C.1993) (affirming the Court of Appeals' holding that the intentional infliction of emotional distress "by the action of another employee [is] within the scope of the [SCWC] Act since these actions arise from personal injuries."); *see also Loges*, 308 S.C. at 137, 417 S.E.2d at 540 (holding summary judgment appropriate on an intentional infliction of emotional distress claim because it constitutes a personal injury within the scope of the SCWCA).

Other courts have likewise dismissed intentional infliction of emotional distress claims on the basis of the SCWCA alone. *See McClain v. Pactiv Corp.*, 360 S.C. 480, 485, 602 S.E.2d 87, 89 (Ct. App. 2004) (affirming the trial court's ruling in dismissing the intentional infliction of emotional distress cause of action because it was barred by the SCWCA); *see also Williams v. GlaxoSmithKline LLC*, 2019 WL 211087, at *6 (D.S.C. Jan. 16, 2019) ("To date, the South Carolina Supreme Court has explicitly held that the intentional infliction of emotional distress falls within the scope of the SCWCA's exclusivity provision.")

As a matter of law, Boeing has an unambiguous, meritorious affirmative defense such that Plaintiff cannot prove facts entitling him to relief concerning his intentional infliction of emotional distress claim. As such, this claim must be dismissed as a matter of law.

## V. CONCLUSION

For these reasons, Defendants respectfully ask that this Motion be **GRANTED** and that the Court **DISMISS** Plaintiff's second, third, and fifth causes of action with prejudice.

Respectfully submitted,

/s/ William H. Floyd, III
William H. Floyd, III (Fed. ID 1580)
wfloyd@nexsenpruet.com
Nexsen Pruet, LLC
1230 Main Street, Suite 700
Post Office Drawer 2426
Columbia, South Carolina 29202
Telephone: (803) 771-8900
Fax: (803) 253-8277

July 8, 2019
Columbia, South Carolina